CALVIN GRAVES, SURVIVING EXECUTOR, ETC., v. RENS-
SELAER WATERMAN, ADMINISTRATOR, ETC., APPELLANT,
AND HELEN STEWART, ADMINISTRATRIX, ETC., RESPONDENT.

*Trustee — may purchase from cestui que trust.*

There is no rule of law which prevents a trustee from purchasing from a *cestui que trust* his interest in the trust estate. But the courts will examine all such transactions with care, in order to see that no undue advantage has been taken of the *cestui que trust*.

APPEAL from a judgment in favor of the defendant Helen Stewart, administratrix, etc., entered on the report of a referee.

This is an action of interpleader, brought by the surviving executor of Chandler Root, deceased, to determine which of the two defendants is entitled to that residuary share of the estate of Chandler Root, which, by his will, was given to Erastus C. Root, deceased. One of the defendants, Helen Stewart, is the administratrix of Erastus C. Root, deceased, and claims as such administratrix. The other defendant, Rensselaer Waterman, is administrator of Mary Ann Root, deceased, and claims, as such administrator, by virtue of a certain assignment, made by Erastus C. Root to said Mary Ann Root, who was his mother.

By the will of Chandler Root, after the payment of certain legacies, so much of the estate as would produce $600 per annum for the widow during her life, was to be set apart. At her death this principal sum was to go equally to his heirs. All the residue of his estate was to be divided equally among his children, when the youngest should arrive at twenty-five. That event took place May, 1873, and Mary Ann Root had died in February, 1871. Erastus C. Root was one of the five children, and it is his share of the residue (including that set apart for the widow's income) which is in dispute.

After Erastus C. Root had become of age, and in 1857, he received his specific legacy, under the will, of $4,000 ; went into business and became insolvent. Afterward, in 1858, he returned to the house of his mother, Mary Ann Root, and she boarded and clothed him, and furnished him with necessary spending money till the fall of 1869. He then went to New York city to attend

medical lectures, and Mary Ann Root furnished the necessary moneys from her own funds. After his return to his mother's house from attending said lectures, and on the 26th day of March, 1860, he executed, at her request, under hand and seal, a writing, assigning to her all his right, title and interest, which he had as heir at law, devisee or legatee of Chandler Root. The consideration, as expressed therein, was one dollar, and the aid and assistance furnished him by her in boarding expenses, while endeavoring to qualify himself to practice medicine. The instrument was duly acknowledged and delivered March 27, 1860, and was recorded in the clerk's office, January 14, 1861. He continued to board with his mother till the fall of 1860, and she paid his expenses. He then went again to New York to attend medical lectures, and his mother furnished him money to pay his expenses. About November, 1861, the said Mary Ann Root, from her own means, furnished him with from $300 to $400, to purchase an outfit as second lieutenant in the army.

At the time when he made the assignment, he was indebted to sundry persons, which debts have not been paid. He died in the spring of 1866. His widow married again, and was appointed his administratrix, September 13, 1869.

Mary Ann Root was an executrix of the will of Chandler Root, and there were three executors. She did not attend personally to any of the duties of receiving, investing and disbursing the moneys and funds of the estate.

This case was tried before a referee, who reported in favor of Helen Stewart, administratrix. Rensselaer Waterman, the administrator of Mary Ann Root, appeals.

*Samuel A. Bowen,* for the appellant.

*H. Sturges,* for the respondent.

LEARNED, P. J.:

. The first claim of the administratrix of Erastus C. Root, is, that the assignment was void, because it was made to hinder, delay and defraud creditors. The referee does not so find; and there was no evidence of such actual intention. Although no consideration passed at the time of executing the assignment, yet the assignee,

Mrs. Root, had supported the assignor for two years, and had paid his expenses in attending medical lectures. It is not shown how much she had paid. But we cannot assume that it was so inadequate as to indicate fraud. The assignment was public. Creditors seem to have made no attack on its validity for the six years, from its execution till the death of Erastus C. Root. And it must be remembered that the share which was assigned, was not payable until the death of Mrs. Root, so that its value, estimated at the time of the assignment, was much less than it now is.

Second. It is suggested that Erastus C. Root was entitled to his support from the estate under the third clause of the will. But a fair construction of the whole is, that the support was only till he was of age. The widow, as guardian, was to educate and support the children "while under lawful age." A legacy of $4,000 to each child was to be paid to the sons as they came of age. It is reasonable to understand that the claim for support was then to cease.

Third. But the real ground of the claim made by the administratrix, and that upon which the referee has decided in her favor, is, that the assignment was void, because it was "such a dealing with the property in trust as is forbidden by law." The administratrix urges that Mary Ann Root was a trustee, and that a trustee may not deal with the subject of the trust. This is undoubtedly a well settled rule. Its meaning is, that a trustee, holding trust property, cannot, by any transaction with himself, change that property into his own. He cannot make a bargain with himself. This principle is thoroughly explained, and numerous cases are cited, in *Gardner* v. *Ogden* (22 N. Y., 327). The trustee, by making what purports to be a sale of the trust property to himself, does not change the character in which he holds the property. And so if, as trustee, with trust moneys, he buys from himself, the sale is invalid. And the principle is so well settled, that the courts will not inquire, at the instance of the trustee, whether the bargain may not, in fact, have been beneficial to the *cestui que trust* but will hold it to be void.

But that rule does not apply to the transaction in question. Mary Ann Root, as executrix, did not attempt to sell to herself, in

her own right, any trust property. Nor did she, in her own right, attempt to buy from herself, as executrix, any trust funds. If she had, as executrix, sold and transferred to herself in her own right, a part, or the whole, of the securities which she held, that would have been a transaction within the rule ; and at the instance of Erastus C. Root, the *cestui que trust*, it could have been declared void.

A single consideration will show the distinction. In all these instances, where dealing with trust property by a trustee has been held void, it has been done on the application of the *cestui que trust*. If he chooses to affirm the transaction, he may ; and he can thus hold the trustee to the attempted bargain. Now in the present instance, Erastus C. Root was the very party with whom the transaction was had. He affirmed it when it was made. His executrix cannot disaffirm.

But furthermore : a purchase by a trustee from his *cestui que trust*, of the latter's interest in the trust property, is not in the least within the rule above mentioned, or within its reason. It is not a buying from himself. It is not a dealing with the trust property. It is a dealing simply with the *cestui que trust*. The rule is often said to rest on the inconsistency of permitting the same person to be both buyer and seller. That inconsistency does not exist in a case like this. We may put this in another light. Could not Mary Ann Root have paid Erastus C. Root his share, at that time, if she had chosen so to do ? And if she had done this, would the transaction have been affected by her taking an assignment to herself of his interest ? For we must notice that the claim of the administratrix is not that Mary Ann Root did not pay enough to her son ; but that she could not buy at any price. The rule on which the administratrix insists, correctly stated, is not that the trustee shall not deal with the *cestui que trust*, but that he shall not deal with the trust property. The distinction may be illustrated by reference to the case of *Gardner* v. *Ogden*. In that case the plaintiff had made the defendant his agent to sell land. The agent (or rather his clerk, who of course stood in the same position) negotiated a sale to this clerk. The plaintiff did not know that it was his agent's clerk who was making the purchase, and the sale was declared void. But let us suppose that the agent, *openly and in his own name*, had made an offer to the plaintiff for

the land, and the plaintiff, knowing that it was his agent who made the offer, had accepted it, would such a sale have been held void? Clearly not. It would have lacked the very element which made the actual transaction in that case objectionable.

Fourth. But there is another principle applicable to this present case, which the court below may have confounded with that above discussed. That principle is, that a court of equity will scrutinize carefully all transactions between persons standing in a confidential relation, one to the other. And, therefore, the circumstances under which this assignment was made, may be examined in order to see whether undue advantage was taken. Now, on this point it is important to observe, that no claim of this sort was made by the administratrix. Her position seems to have rested solely on the alleged illegality of the transaction. Nor is there any evidence to lead to the conclusion that Mary Ann Root took advantage of her son in obtaining this assignment. He was a man of full age; capable, so far as appears, of taking care of himself. She was his mother, apparently desirous to aid him in his troubles. She continued to supply his expenses after the assignment, and, furthermore, purchased his outfit in the army, so that there was no apparent intention to do him wrong. Indeed, it would seem probable that, in fact, he received the full value of his interest. Twelve years after the assignment, his interest in the estate is found to be about $3,700. If we deduct interest for that period, its value at the time of the assignment would be not more than half that amount. He seems to have received about two years' board and clothing and the expenses of medical lectures, before the assignment, and other board and expenses afterward, besides the outfit of $300 to $400. Under all the circumstances, therefore, there is no reason to set aside the assignment on the ground of actual fraud or imposition.

The judgment should be reversed, so that after the payment of costs to all parties out of the fund, including costs of appeal, the balance should be paid to the defendant Rensselaer Waterman, administrator.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Ordered accordingly.